# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-CR-0056-CVE |
| | ) | (12-CV-0123-CVE-PJC) |
| DEMONTE HOWARD EMBRY, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On March 7, 2012, defendant Demonte Howard Embry, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 123. Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

## I.

On March 3, 2010, Tulsa Police Department (TPD) Gang Unit Officers Mark Wollmershauser (Wollmershauser) and Brian Blair (Blair) were conducting a directed patrol in the area of the Seminole Hills apartments in Tulsa. Dkt. # 113, at 17-18. Wollmershauser and Blair saw four men standing in the apartment complex parking lot, and stopped to talk to the men. As Wollmershauser approached, he saw defendant, while staring intently in the officers' direction, "remove a brownish, blackish gun, semiautomatic pistol out of his front right hoodie pocket, crouch down behind a vehicle, and place his hand out of [the officers'] view." Id. at 22. Against the

background of defendant's white hoodie, Wollmershauser could see the barrel clearly protruding

past defendant's hand. Id. at 52. Wollmershauser heard a noise, and when defendant stood back up,

"the gun was no longer in his hand." Id. at 22. Out of concern for officer safety, Wollmershauser

began to rapidly approach defendant to prevent him from running. Id. at 24-25, 35-36. Defendant

started backpedaling. Id. at 27, 36. Wollmershauser ordered defendant to the ground, pulled

defendant down, handcuffed defendant, and recovered the gun that was laying a few feet away. Id.

at 27. The gun was chamber-loaded and had two additional rounds of ammunition in the magazine.

Id. at 29.

Because Wollmershauser was concerned that the other three individuals were a threat to

officer safety, Wollmershauser took the gun to his patrol car, unloaded it, and locked the car door.

Id. at 28. Wollmershauser did not wear gloves when he recovered the gun because the situation was

"rapidly evolving." Id. at 31. He stated that quickly removing the gun from the situation "was the

fastest thing" that he could do to make the situation safer. Id. at 28. Wollmershauser did not put

on latex gloves later, after the scene was secure, because he had seen defendant take the gun out of

his pocket and had seen defendant in possession of the gun. Id. at 44. Wollmershauser did not take

further steps to preserve fingerprints because he had "completely handled" the gun and "put [his]

fingerprints all over it." Id. at 45.

Defendant was arrested at the scene. Id. at 32. Wollmershauser did not list in his police

report the names of the other three men at the scene because they "didn't possess a gun that day,"

and "weren't involved in any criminal activity." Id. at 50. A records search determined that

defendant was a convicted felon. On April 6, 2010, a federal grand jury charged defendant with

being a felon in possession of a firearm and ammunition. Dkt. # 2. Defendant was arraigned on

May 18, 2010, and Keith Ward (Ward) was appointed as defendant's counsel. Dkt. ## 6, 7.

As part of discovery, defendant moved for disclosure of exculpatory and impeaching

evidence from the government. Dkt. # 12. Defendant requested substantial information regarding

the TPD and its officers, including a then-ongoing federal investigation of corruption in the TPD.

Defendant's motion was referred to a magistrate judge, and a hearing was held on June 16, 2010.

Dkt. # 19. At the hearing, the government represented to the court that it had produced to

defendant's counsel all of the information in its possession. Id. at 2. Defendant's counsel also

requested the police logs and radio traffic records for the time surrounding the arrest, and the

government represented that the officers were not radio dispatched to the scene, but agreed to ask

the officers involved about police logs or radio traffic. Dkt. # 109, at 11-12. The government also

represented to the court that none of the officers involved was "part of that corruption investigation"

and that, because the United States Attorney's Office for the Northern District of Oklahoma was

recused from the corruption investigation, the government was not in possession of any of the files

related to the investigation. Id. at 3. The magistrate judge found that, based on the government's

representations, defendant's motion was moot. Id. at 12-13.

On July 19, 2010, defendant's first trial began. During the mid-afternoon recess on the first

day of trial, in response to a subpoena from defendant's counsel (Dkt. # 23), the custodian of records

for the TPD appeared and provided a police radio log, which contained the names of the three

witnesses present at defendant's arrest (Dkt. # 29, at 1). Defendant moved for a mistrial based on

the government's failure to provide the radio log, which was granted. Dkt. # 29. Thereafter,

defendant moved to dismiss the indictment with prejudice (Dkt. # 32, at 1), which was denied (Dkt. # 33).

Prior to defendant's second trial, the government filed a motion in limine requesting a prohibition against "any party, witness, or other person from making any reference to the investigation of members of the Tulsa Police Department for illegal conduct." Dkt. # 36, at 1. The government argued that, because "[n]one of [the] indicted or investigated officers are anticipated government witnesses in the instant case, nor have the anticipated government witnesses been subjects or targets of the investigation[,]" the police corruption was irrelevant to defendant's case. Id. at 2. This Court found that "[t]he investigation into misconduct by certain Tulsa Police Department officers [was] not relevant," and granted the government's motion. Dkt. # 42.

Defendant's second trial began on August 23, 2010. Both Wollmershauser and Blair testified that they saw defendant take a pistol from his pocket and put it on the ground. Dkt. # 50, at 30, 116. The three witnesses who were with defendant at the time of his arrest all testified that they did not see defendant with a gun. Id. at 68, 88, 102. The jury announced that it could not reach a verdict and was hopelessly deadlocked. Dkt. # 48, at 3; Dkt. # 51, at 28-29. With agreement of both sides, defendant's case was set on the September trial docket. Dkt. # 51, at 30-31.

Defendant's third trial began on September 22, 2010. As in defendant's second trial, Wollmershauser, Blair, and the three witnesses at the scene testified. Dkt. # 110. The government also called a TPD forensic scientist who testified that she found a partial fingerprint on "[t]he barrel area" of the gun, which appeared to be from a left thumb. Id. at 127-28. The forensic scientist was able to exclude defendant as the source of the print, but she concluded that the print was consistent

with an officer having held the gun to unload it.  Id. at 128-30.  The jury found defendant guilty.

Id. at 200.  Sentencing was scheduled for December 22, 2010.  Dkt. # 111, at 9.

Prior to sentencing, defendant filed a motion for discovery requesting access to three

categories of information.  Dkt. # 68, at 4.  Defendant sought:

> 1.　All FBI-302's in the possession of the United States which reference either Corporal Blair or Officer Wollmerhauser [sic];
> 2.　A copy of Corporal Blair's testimony in the matter of *United States v. Henderson and Yelton;*[ ] and
> 3.　A copy of the personnel files of Corporal Blair and Officer Wollmerhauser [sic].

Id.[1]  Defendant's request was based, in part, on news reports that Blair testified in the police

corruption case against Officers Jeff Henderson and Bill Yelton, and that Blair had acknowledged

that "he [was] a friend of Henderson," that "he acted on tips from Henderson to investigate people

who could testify against [Henderson]," and he had later told Henderson's lawyer that he could no

longer assist either Henderson or Yelton.  Id. at 3.  Defendant's discovery motion was referred to

a magistrate judge.  Dkt. ## 69, 70.  After a hearing on defendant's motion for discovery, the

magistrate judge authorized defendant to order a copy of the transcript of Blair's testimony but

denied the remainder of defendant's motion.  Dkt. # 112, at 12, 22-23.  The magistrate judge found

that defendant failed to establish a specific evidentiary basis for the remainder of his request.  Id.

at 23-24.  Defendant did not appeal the partial denial of his discovery motion.

While his discovery motion was pending, defendant filed a motion for new trial.  Dkt. # 71.

Defendant argued that, if the jury had been aware that Blair was conducting investigations on his

own time to assist other police officers accused of corruption, it was likely that the jury would have

---

[1]　The testimony referred to was given on September 22, 2010 in United States v. Jeff M. Henderson and William A. Yelton, Case No. 10-CR-117-BDB (N.D. Okla.) (hereinafter Henderson hearing).

discounted Blair's testimony and that defendant would have been acquitted. Id. at 7. Defendant also argued that this Court's ruling, prior to the second trial, on the government's motion in limine would have been different had this Court known of Blair's involvement in Henderson's case. Id. at 5. Defendant further argued that Blair assisted in the suppression of the names of the witnesses present at the time of defendant's arrest and of the fingerprint evidence. Id. at 8. This Court found that defendant "presented no newly discovered evidence" regarding Blair's alleged suppression of information about the witnesses' identities or the fingerprint evidence, but that defendant had presented new evidence that Blair was a friend of, and engaged in an investigation on behalf of, Henderson and Yelton. Dkt. # 80, at 8, 13. Because Blair suppressed evidence regarding his relationship with Henderson and Yelton, which could have affected his credibility and changed the outcome of defendant's trial, this Court granted defendant a new trial. Id. However, the Court noted that the "decision is not a license to inquire into the entire investigation of the TPD or to seek additional discovery" and that "[defendant] is limited to use of the transcript of Blair's testimony on September 22, 2010 to cross-examine Blair as to his assistance in the defense of Henderson and Yelton." Id. at 16 n. 8.

Prior to defendant's fourth trial, the government filed a motion in limine to exclude Blair's testimony if defendant called Blair in his case-in-chief. Dkt. # 82. The government argued that the transcript from the Henderson hearing would be inadmissible as substantive testimony and should not be used solely for impeachment. Id. Defendant argued that use of the transcript to confront Blair with his inconsistent statements would be a permissible means of impeachment if Blair testified differently than he had in his previous testimony. Dkt. # 86, at 4. This Court granted the government's motion insofar as the government requested exclusion of Blair's testimony in support

of officers Henderson and Yelton other than for impeachment, or regarding the ongoing investigation of TPD officers. Dkt. # 87, at 3-4. However, this Court denied the government's request to exclude Blair as a potential fact witness for defendant, but noted that defendant "'may not call a witness knowing the witness will not provide substantive testimony, but only to impeach the witness.'" Id. at 2-4 (quoting United States v. Woody, 250 Fed. App'x 867, 882 n.7 (10th Cir. 2007) (unpublished)). Further, this Court observed that Federal Rule of Evidence 608(b) prohibits use of extrinsic evidence of specific instances of conduct to attack a witness's capacity for truthfulness, and that such instances may be inquired into only on cross-examination. Id. at 3.

Defendant's fourth trial began on January 18, 2011. Defendant and the government both elected not to call Blair as a witness. Dkt. # 113. The government called Wollmershauser. Id. at 17. The same TPD forensic scientist again testified regarding the partial fingerprint on the barrel of the gun. Id. at 55. And, defendant called Cameron Cornelius, one of the three witnesses present at defendant's arrest, who again testified that he never saw a gun in defendant's possession the day defendant was arrested. Id. at 78. The jury found defendant guilty. Dkt. # 114, at 6-7. This Court sentenced defendant to 77 months imprisonment and 36 months supervised release. Dkt. # 99. A judgment and commitment was entered on February 17, 2011. Dkt. # 100.

Defendant filed a notice of appeal (Dkt. # 102) and a motion for leave to appeal in forma pauperis (Dkt. # 103). This Court granted defendant's motion for leave to appeal in forma pauperis (Dkt. # 104), and the Tenth Circuit appointed Ward as defendant's appellate counsel (Dkt. # 118). On appeal, defendant argued that the magistrate judge erred in limiting discovery of further exculpatory and impeaching information in ruling on defendant's discovery motion, and that this Court erred in limiting the manner in which defendant would be allowed to impeach Blair's

7

testimony during the fourth trial.  See United States v. Embry, 452 Fed. App'x 826, 830 (10th Cir. 2011) (unpublished).   The Tenth Circuit affirmed both the limitations on discovery and the restrictions on impeaching Blair.  Id. at 832, 836.

Thereafter, defendant filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Dkt. # 123.  The government filed a response (Dkt. # 134), and defendant filed a reply (Dkt. # 135).

**II.**

In defendant's § 2255 motion, defendant raises six ineffective assistance of counsel claims. Dkt. # 123.  Defendant argues that Ward was ineffective because he failed to: (1) "exercise peremptory challenges to [avoid an] all-white jury;" (2) "call Cpl. Blair, the arresting officer, as a witness in the fourth jury trial;" (3) call "the three citizen witnesses who had no apparent bias and no criminal records;" (4) "file a motion for acquittal after the fourth jury trial inexplicably resulted in a conviction;" (5) "file a motion for continuance in his fourth trial" if the "essential citizen witnesses with exculpatory testimony/information" were unavailable; and (6) "conduct adequate discovery in preparation for [defendant's] four [ ] trials."  Dkt. # 123, at 12, 14, 16, 18, 19-21. Defendant further argues that the Court should conduct a "cumulative error analysis" and find that, collectively, all of Ward's errors were not harmless.  Id. at 23.  Finally, defendant requests appointment of counsel and an evidentiary hearing on his § 2255 motion.  Id. at 24.  The government filed a response and submitted an affidavit of Ward.  Dkt. ## 134, 134-1.  Defendant filed a reply to the government's response,  in which he argues that the government, in its response, "rambles through a convoluted interpretation of [his] arguments without meeting each challenge directly," and defendant further reiterated his six claims for relief.  Dkt. # 135.  Defendant also submitted an

"affidavit," which lacks a notary's signature, in which he set forth his response to Ward's affidavit. Id. at 18-19.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

**A.**

Defendant's first claim for relief is that Ward's exercise of peremptory challenges failed to avoid an all-white jury, which constituted ineffective assistance of counsel. Dkt. # 123, at 27. In defendant's reply, he further argues that Ward did not attempt to seat black jurors, and because his

previous three trials, he claims, all contained mixed-race juries, and all three trials "resulted in mistrials," Ward's exercise of peremptory challenges could not have been an informed strategic decision.[2]   Dkt. # 135, at 6.

The decision to exercise a peremptory challenge is the type of strategic decision to which courts give considerable deference.  DeLozier v. Sirmons, 531 F.3d 1306, 1323 (10th Cir. 2008). "Generally, an attorney's actions during voir dire are considered to be matters of trial strategy, which cannot be the basis of an ineffective assistance claim unless counsel's decision is so ill chosen that it permeates the entire trial with obvious unfairness."  Neill v. Gibson, 278 F.3d 1044, 1055 (10th Cir. 2001) (brackets, ellipses, and internal quotation marks omitted).  "The reasonableness of counsel's challenged conduct must be assessed at the time of the conduct.  Neither hindsight nor success is the measure."  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997) (citations omitted). Further, "a counsel's failure to exercise peremptory challenges does not give rise to a claim of ineffective assistance of counsel absent a showing that the defendant was prejudiced by his counsel's failure to exercise the challenges."  United States v. Taylor, 832 F.2d 1187, 1196 (10th Cir. 1987) (citations omitted).

Ward states that he did exercise peremptory challenges in a strategic fashion, and that he attempted to include black jurors on the jury.  Ward did not have control over the venire panel, nor over which jurors were randomly selected for voir dire.  Defendant sets forth no other facts, besides the fact that he had an all-white jury, to show that Ward's exercise of his peremptory challenges was deficient.  In his affidavit, Ward states that his "recollection is that the jury pool was heavily

---

[2]      Although subsequent to defendant's third trial the Court granted his motion for new trial (Dkt. # 80, at 16), the jury in that trial had found defendant guilty (Dkt. # 66).  A mistrial was not declared.

weighted with potential jurors who were white," and that both he and defendant "wanted to include black jurors in the jury who heard this case." Dkt. # 134-1, at 3. Ward further states that, although he had "no control of the composition of the jury pool or the race of the jurors excluded by the government, [he] attempted to seat black jurors in [defendant's] case." Id. Defendant argues that Ward's expression of dissatisfaction with the jury after jury selection concluded proves that Ward was ineffective for failing to "remedy the situation." Dkt. # 123. On the contrary, Ward states, in his affidavit, that he did attempt to seat black jurors on the jury, as he had done in defendant's previous trials, but that he was unsuccessful. Dkt. # 134-1, at 3.

The master jury wheel, which is a large computerized pool is maintained by the Court Clerk, contains the names of all persons deemed qualified as prospective jurors. From that wheel, the Court Clerk randomly sends summonses to persons who appear for jury selection, known as the venire panel. From the venire panel, a group of prospective jurors is randomly drawn for voir dire. Insofar as Ward and defendant refer to Ward "seating black jurors," they are mistaken. Neither the parties nor counsel "seat" jurors. Counsel make a strategic choice to exercise peremptory challenges to unseat prospective jurors. Making a strategic choice, even if the strategy ultimately fails, does not rise to the level of deficient performance. Further, defendant's showing that he was prejudiced by Ward's allegedly deficient performance is that he was convicted. However, a previous jury, which defendant acknowledges was not all-white, also convicted defendant in his third trial. Therefore, defendant has failed to show that Ward's strategic use of peremptory challenges was deficient under the first prong of Strickland, or that he was prejudiced by that allegedly deficient performance under the second prong of Strickland.

11

**B.**

Defendant's second claim for relief is that Ward's failure to call Blair as a witness in defendant's fourth trial constituted ineffective assistance of counsel. Defendant argues that Blair's "credibility was an issue due to his assistance with attempting to discredit the government in [its] corruption case against [Blair's] fellow Tulsa Police Officers." Dkt. # 123, at 29. Defendant further asserts that "[t]here is no doubt that the testimony of Cpl. Blair, in light of the witness statements and existing government misconduct, would have been undermined . . . ." Id. at 30. Ward's affidavit states that he elected not to call Blair because "[w]ithout what [he] deemed to be proper impeachment . . . Blair's testimony was inculpatory and damaging to Mr. Embry and would have merely corroborated the inculpatory testimony" of Wollmershauser. Dkt. # 134-1, at 3.

"[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney." Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008) (citations omitted). A defendant claiming ineffective assistance of counsel must overcome the general presumption that counsel's actions were a part of a "legitimate trial strategy." Bullock v. Carver, 297 F.3d 1036, 1047 (10th Cir. 2002). Further, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengable." Strickland, 466 U.S. at 690.

Defendant fails to overcome the presumption that Ward made a reasonable strategic decision. Defendant asserts that Blair's testimony was "questionable" in previous trials and that the allegations of corruption would have undermined his testimony. However, this Court had already ruled that defendant could call Blair only as a fact witness, and that defendant could not call Blair solely to impeach him with his testimony in the Henderson hearing. Moreover, defendant raised in his appeal to the Tenth Circuit the proposition that this Court erred in limiting the manner in which

12

defendant could impeach Blair's testimony during the fourth trial.  See Embry, 452 Fed. App'x at

836.  The Tenth Circuit affirmed this Court's order and further stated that "[s]ince [defendant] could

not question Blair about his involvement with the *Henderson* case directly, he could not generate

a statement inconsistent with his trial testimony and thus would have no need or ability to impeach

Blair with his testimony as a prior inconsistent statement." Id.

Ward made a strategic choice that it would be harmful to call Blair when Blair's testimony

would merely inculpate defendant and would leave no possibility for impeachment with the

Henderson hearing testimony.  Because all of defendant's arguments revolve around the jury's

credibility assessment of Blair after learning of his involvement with the corruption scandal,

defendant fails to show that Ward's choice was an unreasonable strategic decision and therefore

deficient.  Moreover, defendant cannot show that Ward's failure to call Blair during defendant's

fourth trial prejudiced defendant because, after hearing both Blair and Wollmershauser testify in

defendant's third trial, the jury found defendant guilty.  Because Ward made the strategic decision

not to call Blair, knowing that he would not be able to use the Henderson hearing to undermine

Blair's credibility, defendant cannot show either that Ward's performance was deficient under the

first prong of Strickland, or that Ward's allegedly deficient performance prejudiced defendant under

the second prong of Strickland.

## C.

Defendant's third claim for relief is that Ward's failure to call the three witnesses present at

defendant's arrest constituted ineffective assistance of counsel.  Dkt. # 123, at 31.  Defendant does

not identify the three "citizen witnesses" that he argues Ward should have called at his fourth trial;

however, it seems that defendant is referring to David Chandler, Cameron Cornelius, and Terrance

Williams, who were the three witnesses for the defense at defendant's second and third trials. See Dkt. ## 110, 111, 113, 114. Ward did call one of the three "citizen witnesses" at defendant's fourth trial. Dkt. # 113, at 73. Cameron Cornelius testified that he did not see defendant pull a pistol out of his clothing when the officers approached. Id. at 78. Ward explains in his affidavit that he issued subpoenas to each of the three citizen witnesses, but that he was informed that one of the witnesses no longer lived in Tulsa and could not be served and that a second was "currently in drug and/or alcohol treatment." Dkt. # 134-1, at 4-5. Ward states that he "made a strategic decision to conduct the trial with only one of the three citizen witnesses," which is a decision he discussed with defendant. Id. Defendant asserts that Ward did not discuss with him proceeding with one witness, and that he, as a layman, did not know that his counsel had the ability to ask for a continuance in order to find the witness who no longer lived in Tulsa. Dkt. # 135, at 10-11. Ward states in his affidavit that because defendant "had already been in custody for nearly a year and endured three previous trials," and because Ward "did not want to sponsor a witness who was in drug and/or alcohol treatment to dispute the percipient observations of a police officer," he thought that the best strategic decision that he could make was to proceed with Cameron Cornelius only. Id.

The decision regarding "whether to call a particular witness is a tactical decision, and, thus, a matter of discretion for trial counsel." United States v. Snyder, 787 F.2d 1429, 1432 (10th Cir. 1986) (quotation and citation omitted). Once counsel makes a strategic choice after investigating the facts relevant to the available options, a counsel's decision is "virtually unchallengeable." Strickland, 466 U.S. at 690. Ward called all three witnesses during defendant's third trial, and that jury found defendant guilty. Because Ward made the strategic decision to proceed with only one of the three witnesses after considering the potential credibility problems of a witness in drug or

14

alcohol treatment and the prospect of prolonging defendant's pretrial detention even further, defendant fails to show that Ward's performance was deficient under the first prong of Strickland, or that any alleged deficient performance prejudiced defendant under the second prong of Strickland.

**D.**

Defendant's fourth claim for relief is that Ward's failure to file a motion for judgment of acquittal after the fourth trial constituted ineffective assistance of counsel. Dkt. # 123, at 33. Defendant asserts that "an all-white jury inexplicably convicted [him] despite the overwhelming evidence of his innocence against the backdrop of egregious police corruption and misconduct in the Tulsa area." Id. He further argues that the "exculpatory testimony of the three citizen witnesses (had they been called to testify in [his] fourth trial), the lack of [his] fingerprints on the gun in question, and the already-proven police corruption and misconduct in Tulsa" left the jury with no credible evidence to find him guilty. Id. at 34. Ward, however, states in his affidavit that he did, in fact, move for a judgment of acquittal. Dkt. # 134-1, at 4. Furthermore, the record reflects that Ward moved for a judgment of acquittal at the close of the government's evidence, and that Ward renewed his motion at the close of all the evidence. Dkt. # 113, at 71, 101. Because Ward did move for a judgment of acquittal, defendant's claim that Ward was ineffective for failing to do so fails. Defendant does not meet either the first or second prong of Strickland.

**E.**

Defendant's fifth claim for relief is that Ward's failure to file a motion for continuance in the event that the three "citizen witnesses" were unavailable constituted ineffective assistance of counsel. Dkt. # 123, at 34-35. As noted above, Ward states in his affidavit that he made a strategic decision, after weighing the length of defendant's pretrial detention and the credibility of a witness

15

currently in drug or alcohol treatment, that the best strategy was to proceed with just one witness on behalf of defendant. Dkt. # 134-1, at 3-4; see supra Part II.C. Defendant, however, asserts that if his counsel had filed a motion for continuance and delayed the trial until all three citizen witnesses were available to testify, the result of his trial would have been different.

Defendant fails to note that his case had already been tried three times and that eight months had passed since his arraignment. Dkt. ## 6, 91. It is highly unlikely that this Court would have granted a continuance because of the public's interest in a speedy trial. United States v. Toombs, 574 F.3d 1262 (10th Cir. 2009). Further, the decision regarding whether to call a witness rests with trial counsel. Snyder, 787 F.2d at 1432. As long as counsel's decision is part of a sound trial strategy, there is a general presumption that counsel's performance was not deficient. Bullock, 297 F.3d at 1047. First, Ward called one of the citizen witnesses, and that witness testified to substantially the same events that both other citizen witnesses testified to in the second trial. See Dkt. # 110, at 141, 175; Dkt. # 113, at 73. Second, Ward called all three witnesses in defendant's third trial, and the jury found defendant guilty. Defendant fails to show that Ward's decision rose to the level of deficient performance, and therefore defendant does not meet the first prong of Strickland. Further, defendant cannot show that Ward's allegedly deficient performance prejudiced him under the second prong of Strickland because it is highly unlikely that a continuance would have been granted and because a previous jury, after hearing from the three citizen witnesses, found defendant guilty.

## F.

Defendant's sixth claim for relief is that Ward's failure to conduct adequate discovery in preparation for his four trials constituted ineffective assistance of counsel. Dkt. # 123, at 36.

16

Defendant clarifies that his claim is that Ward should have appealed the denial of his discovery motion and that Ward should have made a "plausible showing that the files and records sought [in the discovery motion] contained exculpatory evidence." Id. Defendant further asserts that Ward was ineffective for failing to "seek Court approval for transcripts to assist in a more thorough review of the case." Id. In contrast, Ward states, in his affidavit, that he:

> engaged in substantial discovery by obtaining full discovery from the government; fil[ed] motions to obtain additional discovery; obtain[ed] the names of three citizen witnesses which the Tulsa Police Department initially failed to disclose; obtain[ed] discovery to attempt to impeach Corporal Blair; and forc[ed] the government to have the subject handgun tested for fingerprint evidence which was exculpatory.

Dkt. # 134-1, at 4. Defendant sought three categories of discovery in his motion: all FBI-302's referencing Blair or Wollmershauser; Blair's testimony in the Henderson hearing; and personnel files of Blair and Wollmershauser. The magistrate judge granted defendant's request for the transcript of the Henderson hearing, but denied the other two requests. Defendant claims that, if his counsel had appealed that decision and shown a specific evidentiary basis for the request, "it is more than probable that [defendant] could have impeached Corporal Blair as a witness, discredited his testimony, demonstrated government misconduct, and discredited the government's weak case altogether." Dkt. # 123, at 37. However, defendant does not identify the "specific evidentiary basis" that would have supported the discovery requests. The government was under an obligation to produce evidence favorable to the defendant, including impeachment information regarding Wollmershauser and Blair, pursuant to Giglio v. United States, 405 U.S. 150 (1972). Moreover, the magistrate judge also made the government's obligations clear at the hearing on the government's motion in limine. Therefore, there is nothing to suggest that there was exculpatory evidence available that Ward's allegedly ineffective discovery requests failed to discover. Further, when the

discovery order was appealed, the Tenth Circuit noted that "[n]othing in [defendant's] appeal or in the record suggests [defendant] had a sufficient evidentiary basis the magistrate judge otherwise ignored." Embry, 452 Fed. App'x at 832. Therefore, even if defendant could show that Ward's failure to appeal the discovery decision was deficient under the first prong of Strickland, defendant cannot show that the allegedly deficient performance prejudiced him under the second prong of Strickland because there is no reasonable probability that the result of the proceeding, absent the allegedly deficient performance, would have been any different.

## III.

Defendant also requests appointment of counsel and an evidentiary hearing on his ineffective assistance of counsel claims. Dkt. # 123, at 39. Because the Court finds that defendant's § 2255 motion is without merit as none of defendant's claims meets both the first and second prongs of Strickland, appointment of counsel is unnecessary, and defendant's request for counsel is denied. Similarly, defendant "is entitled to an evidentiary hearing on the issue of ineffective . . . counsel 'so long as his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief.'" Hammon v. Ward, 466 F.3d 919, 927 (10th Cir. 2006) (quoting Anderson v. Attorney Gen. of Kansas, 425 F.3d 853, 858 (10th Cir. 2005)) (citation omitted). Therefore, because this Court has found that all of defendant's claims fail to meet both prongs of Strickland, defendant's request for an evidentiary hearing is denied.

## IV.

Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant

has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a certificate of appealability should not issue as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 (Dkt. # 123) is **denied**. A separate judgment is entered herewith.

**IT IS FURTHER ORDERED** that a certificate of appealability is **denied**.

**DATED** this 17th day of October, 2012.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE